Lawrence B. NYDES, an individual,

v.

EQUITABLE RESOURCES INC., a corporation; Employee Pension Committee, an unincorporated association, Appellant.

No. 01–2396.

United States Court of Appeals, Third Circuit.

Argued Feb. 5, 2002.

Opinion Filed April 22, 2002.

Lawrence B. Nydes, Esq. (Argued), Pittsburgh, PA, Attorney for the Appellant.

Martha H. Munsch, (Argued), Reed Smith L.L.P., Pittsburgh, PA, Attorney for the Appellees.

Before BECKER, Chief Judge, McKEE and BARRY, Circuit Judges.

## OPINION OF THE COURT

McKEE, Circuit Judge.

Lawrence Nydes appeals the district court's order granting summary judgment to defendants Equitable Resources, Inc. ("ERI") and the Employee Pension Committee ("EPC") on Nydes' suit for breach of fiduciary duty under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 ("ERISA"). The district court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons that follow, we will affirm.

### I.

Inasmuch as we write only for the parties who are familiar with the factual background of the instant appeal, we will not reiterate the facts except as may be helpful to our brief discussion.

Section 404(a)(1) of ERISA, as codified at 29 U.S.C. § 1104(a)(1), provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries ...". ERISA defines "fiduciary" as any person who "exercises any discretionary control respecting management of such plan ... or has any discretionary authority in the responsibility in the administration of the plan." 29 U.S.C. § 1002(21)(A). " '[W]hen a plan administrator explains plan benefits to its employees, it acts in a fiduciary capacity.' " *International Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. Skinner Engine Co.*, 188 F.3d 130, 148 (3d Cir.1999) (quoting *In re Unisys Corp. Retiree Medical Benefit "ERISA" Savings Plan Litig.*, 57 F.3d 1255, 1261 n. 10 (3d Cir.1995)). See also *Fischer v. Philadelphia Elec. Co.*, 994 F.2d 130, 133 (3d Cir. 1993) ("Fischer I").

Therefore, "[a] plan administrator may not make affirmative material misrepresentations to plan participants about changes to an employee pension benefits plan." *Fischer I*, 994 F.2d at 135. Moreover, "[t]he duty to inform ... [also] entails ... an affirmative duty to inform when the trustee knows that silence might be harmful." *Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir.1993). "Harmful," in this sense, means disclosing " 'those facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection.' " *Harte v. Bethlehem Steel Corp.*, 214 F.3d 446, 452 (3d Cir.2000) (quoting *Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc.*, 93 F.3d 1171, 1182 (3d Cir.1996)). "Put simply, when a plan administrator speaks, it must speak truthfully." *Fischer v. Philadelphia Elec. Co.*, 96 F.3d 1533, 1538 (3d Cir.1996) ("Fischer II") (quoting *Fischer I*, 994 F.2d at 135).

The materiality of a misrepresentation is a "mixed question of law and fact." *Fischer I*, 994 F.2d at 135 (citation omitted). "[A] misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision about if and when to retire." *Id.* (comparison citations omitted). Here, Nydes is alleging that the defendants' failure to disclose changes that were under "serious consideration" when he left ERI was a breach of the fiduciary duty ERI and the EPC owed to him. The district court assumed that ERI and EPC were seriously considering allowing employees who were employed as of January 1, 1997 to receive their entire pension in a lump sum payment when he asked about receiving a lump sum payment upon leaving the company. See Dist. Ct. Op. at 7.

The change Nydes complains of is, of course, the change in the pension plan that became effective after January 1, 1997. After that date, employees were able to receive a lump sum payment from their pension which could then be re-invested into another annuity or a 401(k) plan. David Smith, ERI's Director of Compensation and Benefits, made a presentation to ERI president, Fred Abrew, and the Pension Committee on September 6, 1996, in which Smith argued that ERI needed to amend its pension plan to make it more competitive. One of the changes Smith advocated was the kind of lump sum payout that Nydes would later inquire about. Inasmuch as the record establishes an agreement to present Smith's proposal to the ERI Board of Directors at its November 15, 1996 meeting, the record does support Nydes' claim that, at least by October 11, the proposed changes to the ERI pension plan were under "serious consideration." However, even assuming that the plan was then under serious consideration, we nevertheless conclude those changes were not material to Nydes' "decision" to leave.

Nydes contends that, inasmuch as the changes were under serious consideration, ERI and EPC were under a fiduciary duty to disclose this to him when he inquired about a lump sum payment. However, Nydes cannot prevail because the failure to disclose this information was not material to his "retirement" decision.

Nydes must demonstrate that he would have been able to take advantage of the lump sum option that became effective January 1, 1997, even though he left ERI prior to that date. However, the record contains the uncontradicted affidavit of Joanna O'Loughlin, the current Vice President and General Counsel of ERI. Ms. O'Loughlin avers that she decided to terminate Nydes, and that he would not have been separated from ERI any later than November 1, 1996. Nydes attempts to counter this by arguing that some of the terms of his separation were negotiable despite the lay-off. He therefore insists that he could have negotiated a severance date after January 1, 1997, if he had known of the planned change to his pension that was to become effective on that date. In support of this assertion, he reminds us that he "continued to receive full salary and benefits well into calendar year 1997 and in fact received one-third of his severance salary in the form of a payroll check from ERI with normal withholding in the calendar year 1997." See Appellant's Br. at 6.

However, even accepting that some of the terms of his departure were negotiated, it nevertheless remains uncontradicted that the final date of his separation was not negotiable. Ms. O'Loughlin's assertion that there was no way that he would have been on the payroll on January 1, 1997,

remains uncontradicted. Her affidavit states in pertinent part:

4. Under no circumstances would I have retained Nydes as an employee of Equitable after November 1, 1996. He was no longer performing any duties for the Company as of at least the end of October 1996.

5. Plaintiff's termination was not negotiable, nor was his termination date....

App. 25–26, O'Loughlin Aff. at ¶¶ 2–5. Nydes failed to come forward with anything to rebut O'Loughlin's claim that, regardless of the extension of salary, medical coverage, etc., into 1997, Nydes would not have been retained as an employee of ERI beyond November of 1996 under any circumstances.

In order to survive a motion for summary judgment, "[t]here must be sufficient evidence for a jury to return a verdict in favor of the non-moving party; if the evidence is merely colorable or not significantly probative, summary judgment should be granted." *Boyle v. County of Allegheny Pennsylvania,* 139 F.3d 386, 393 (3d Cir.1998) (quoting *Armbruster v. Unisys Corp.,* 32 F.3d 768, 777 (3d Cir. 1994)).

Accordingly, the district court concluded that the record established as a matter of fact that "[t]he decision if and when to leave ERI was simply never plaintiff's to make." Dist. Ct. Op. at 8. We agree, and we therefore conclude that the district court properly granted summary judgment in defendants' favor.

### JUDGMENT

This cause came to be considered on the record from the United States District Court for the Western District of Pennsylvania and was argued on February 5, 2002.

On consideration whereof, it is now ORDERED AND ADJUDGED by this Court that the order entered May 3, 2001 is hereby AFFIRMED. All of the above in accordance with the opinion of this Court. Costs taxed against appellant.