

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-14-1997

# Ream v. Frey

Precedential or Non-Precedential:

Docket 96-1339

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Ream v. Frey" (1997). *1997 Decisions.* Paper 38.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/38

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-1339

JEFFREY REAM

v.

JEFFREY E. FREY; FULTON BANK;
LAURIE L. FREY

Fulton Bank,

Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 95-01827)

Argued January 13, 1997

BEFORE:  SLOVITER, Chief Judge, and GREENBERG
and SCIRICA, Circuit Judges

(Filed: February 14, l997)

Gerald S. Berkowitz (argued)
625 B. Swedesford Road
Swedesford Corporate Center
Malvern, PA 19355

Attorney for Appellee

Michael A. Moore (argued)
Barley, Snyder, Senft & Cohen
126 East King Street
Lancaster, PA 17602

Attorneys for Appellant

OPINION OF THE COURT

GREENBERG, Circuit Judge.

Fulton Bank (the "Bank") appeals from a grant of summary judgment by the district court in favor of appellee Jeffrey Ream on April 1, 1996. Ream brought suit against the Bank alleging that it breached its fiduciary duty by resigning as plan trustee and transferring to Jeffrey Frey, the plan administrator and the principal in Ream's employer, the assets of an Employee Retirement Income Security Act of 1974 ("ERISA") pension fund plan which Frey subsequently converted and used for his own purposes. This appeal raises questions concerning the scope of the fiduciary duties of a plan trustee under ERISA when the trustee is resigning. We have jurisdiction pursuant to 28 U.S.C. § 1291 as this appeal is from a final order of the United States District Court for the Eastern District of Pennsylvania. This case arises under ERISA, and thus the district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1) and (f), 29 U.S.C. § 1132(e)(1) and (f).

I. FACTUAL AND PROCEDURAL HISTORY

The material facts are not in dispute. See Supplemental Appendix, Stipulation of Uncontested Facts ("Stipulated Facts"). Ream was an employee of JLC Construction Co., Inc. ("Company"). Stipulated Fact ¶ 3. Effective January 1, 1989, the Company established the JLC Construction Company Profit Sharing 401(k) Plan (the "plan") under 26 U.S.C. § 401 et seq. The Company first established the plan pursuant to written plan documents consisting of a Standardized Adoption Agreement

2

and Basic Plan Document.[1]  Stipulated Fact ¶ 4.  Ream was a participant in the plan with a 100% vested account.  Stipulated Fact ¶ 3.  Fulton Bank, the designated plan trustee, deposited all of the plan's funds in a trust account it maintained at the Bank.

In addition to designating Fulton Bank as plan trustee, the Basic Plan Document designated the Company as the plan administrator, and the Adoption Agreement designated Frey, the sole shareholder of the Company, as the plan administrator on behalf of the Company.  App. at 62–63.  The Plan Document also specified the responsibilities of the administrator and the trustee.  The administrator had the duties of establishing a funding policy consistent with ERISA, determining and making contributions to the plan, communicating with plan beneficiaries and participants, and complying with ERISA and other governmental reporting requirements.  Basic Plan Document § 11.1.  The trustee's duties were limited to receiving contributions, investing the contributions once received, and making distributions in accordance with instructions from the Company.  Basic Plan Document § 11.2.  However, the Basic Plan Document placed the responsibility solely on the Company to collect and remit the contributions to the trustee.  Basic Plan Document § 3.3.  Further, the plan specifically allocated to the Company, as

---

1.    Fulton Bank, which also serves as plan trustee for other pension plans and charges a fee for its services, provided all plan documents to the Company.  Stipulated Fact ¶ 7.

the plan administrator, all other administrative duties required by either applicable law or by the plan.

The Plan Document specifically limited the liability of the trustee. Section 11.4 of the Plan Document, entitled "Division of Duties and Indemnification," exempted the trustee from any guarantee "against investment loss or depreciation in asset value, or [from any] guarantee [about] the adequacy of the Fund to meet and discharge all or any liabilities of the Plan." However, the trustee could be liable for its actions "to the extent it is judicially determined that the Trustee/Custodian has failed to exercise the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character with like aims." Furthermore, Section 11.4 stated that "[t]he duties and obligations of the Trustee/Custodian shall be limited to those expressly imposed upon it by this instrument or subsequently agreed upon by the parties. Responsibility for administrative duties required under the Plan or applicable law not expressly imposed upon or agreed to by the Trustee/Custodian, shall rest solely with the Employer."

During Fulton Bank's tenure as trustee, the Company sometimes would delay its remittance of employer contributions for several months. Fulton Bank then would call or write to the Company to expedite remittance of the contributions. The Company caused the Bank additional difficulties because it was uncooperative in providing the Bank with information regarding

4

the plan's administration. Stipulated Fact ¶ 17. By the spring of 1993, the Company had failed to provide Fulton Bank with employer matching contributions for 1992 and 1993. The Bank sent the Company letters "admonishing" it to pay over the monies and warning that it would resign as trustee if salary deferral remittances continued to be delinquent. Finally, the Bank forwarded a letter to Frey stating that it was resigning as trustee pursuant to its prior correspondence and pursuant to Article 15.6 of the Basic Plan Document. See app. at 284, Exhibit 6, app. at 286, Exhibit 7. Article 15.6 provides that the trustee may resign by written notice to the Company followed by delivery of the fund assets to the Company's chosen successor trustee. If the Company failed to appoint a successor, the Bank could deliver the assets to the Company which then would be deemed the successor trustee.

The Bank then attempted to contact the Company to persuade it to appoint a successor trustee for the plan assets, but Frey never responded to the Bank's repeated requests for an appointment. Stipulated Fact ¶ 23. Thus, a successor trustee never was appointed. Ultimately, the Bank sent a letter to Frey stating that unless Frey notified Fulton Bank of the successor within 15 days, the Bank would issue a check to Frey and designate him as the successor trustee in accordance with the plan. App. at 291. Frey did not respond, and Fulton Bank sent him a letter on October 5, 1993, informing him of the status of the plan and forwarding the plan assets consisting of a check in the amount of $53,008.15 and three promissory notes. App. at

5

293. The Bank appointed Frey as the successor trustee of the plan. The check was payable to "Jeffrey Frey, successor Trustee for the JLC Construction Co., Inc. Profit Sharing 401(k) plan." The check was endorsed "Jeffrey Frey" and honored by the Bank. Frey subsequently converted all of the assets of the plan to his own use.

Ream's account balance in the plan at the end of 1992 was $13,829.92, and he continued to make weekly contributions to the plan through 1993 totaling $1,180.80. As we indicated, the Bank sent Frey a check for $53,008.15, an amount exceeding Ream's balance. At oral argument counsel advised us that there were ten to fifteen of other beneficiaries to the plan, but except for Ream no beneficiary has brought any action against the Bank.

On November 3, 1994, the Company filed for bankruptcy under Chapter 7 of the Bankruptcy Code in the Eastern District of Pennsylvania and shortly thereafter Ream demanded payment of his plan assets from Frey. Until this time, Ream was not aware that Fulton Bank had transferred the plan assets to Frey, and neither the Bank nor the Company ever had notified Ream of the delays in payments to the plan, of Fulton Bank's intention to resign, or of Fulton Bank's final resignation. Ream's wife contacted Fulton Bank after the Company filed for bankruptcy. In response to her inquiry as to why the trustee had not notified the plan beneficiaries as to what had happened, the Bank responded that "while we are not having cooperation from the Company, that did not mean bad things were happening . . . ." App. at 347.

6

By letter dated January 4, 1995, Frey acknowledged that he owed Ream $16,206.00 pursuant to the plan and proposed paying that money in installments. App. at 346; Stipulated Fact ¶ 34. Though Ream initially rejected this offer, instead instituting suit against both Frey and the Bank for breach of fiduciary duty, Ream later agreed to settle with Frey for $21,556.93. However, Frey paid only $18,556.93 to Ream before disappearing. It appears that the settlement figure exceeded the amount due Ream under the plan because Frey owed him additional money on other items. App. at 306.

This appeal concerns the $3,000.00 which Frey did not pay to Ream plus interest owed to Ream as well as the substantial attorney's fees that Ream has incurred. Frey has been dismissed from the suit as he is no longer within the jurisdiction and the parties do not know his whereabouts. Stipulated Fact ¶ 36.

On cross-motions for summary judgment, the district court held that Ream could recover damages on his own behalf for a breach of fiduciary duty under ERISA, that Fulton Bank violated its fiduciary duty by not acting as a prudent person when it forwarded the plan assets to Frey who had a history of failing in his fiduciary duties to the plan, and that Fulton Bank was liable for Frey's subsequent breach of fiduciary duties because its own failure to comply with the required standard of care enabled Frey, a co-fiduciary, to convert the assets of the plan for his own use.[2] The court, however, dismissed Ream's common law tort

2. We need not reach the question of whether Fulton Bank is liable as a co-fiduciary under ERISA § 405(a), 29 U.S.C. § 1105(a), inasmuch as we will affirm the district court judgment

7

claims as preempted by ERISA – a holding he does not dispute on this appeal. Although it had reserved the issue of damages for trial, based on the parties' stipulated agreement the court entered a judgment against the Bank on April 15, 1996, in the amount of $3,200.00 and awarded Ream $18,000.00 in attorney's fees and costs.[3] Fulton Bank then appealed. We are undertaking a plenary review of the district court's decision.

## II. DISCUSSION

A "person is a fiduciary with respect to a plan," and therefore subject to ERISA fiduciary duties, "to the extent" that "he exercises any discretionary authority or discretionary control respecting management" of the plan, or "has any discretionary authority or discretionary responsibility in the administration" of the plan. ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). Fulton Bank was the trustee of the plan. As described in the Plan Document, "the Trustee/Custodian shall have the authority and discretion to manage and govern the Fund to the extent provided in this instrument." App. at 250. Clearly, this provision evidences an express allocation of discretionary authority to Fulton Bank as trustee. Further, the Plan Document

---

on the basis that the Bank violated its fiduciary duties as trustee and the damages are the same whether the Bank is found liable as trustee or as co-fiduciary.

3. We note that Frey paid Ream all but $3,000.00 of the settlement but Ream and the Bank stipulated his damages at $3,200.00. We cannot explain this discrepancy. The Bank does not challenge the amount of the attorney's fees and costs the court awarded.

holds the trustee liable only to the extent that "it is judicially determined that the Trustee/Custodian has failed to exercise the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character with like aims." Id. These words are the very ones used in ERISA to describe fiduciary duties. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B). There is thus no question but that under the plan, Fulton Bank was intended to be and was a fiduciary with all of its corresponding duties and responsibilities and, indeed, it does not contend otherwise.

a. Recovery as an Individual Beneficiary

Fulton Bank argues that the Supreme Court in Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 139, 105 S.Ct. 3085, 3089 (1985), an action under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), precluded an ERISA beneficiary from recovering damages on his own behalf from an ERISA fiduciary for breaches of fiduciary duty. Thus, the Bank contends "that remedies for an alleged breach of fiduciary duty under ERISA must enure to the benefit of the entire [p]lan or to all plan participants." Br. at 19. Accordingly, in its view Ream cannot maintain this action as he is seeking relief for himself. In a sense, of course, this may be a strange argument for the Bank to make. Ream unquestionably does have standing to bring an action on behalf of the plan, and it is entirely possible that such an

9

action would have resulted in a greater judgment against the Bank than the judgment Ream recovered as the Bank sent Frey all of the plan's assets, not just those reflecting Ream's interest. ERISA § 502(a)(2).

In any event, as Ream points out, the Supreme Court in Varity Corp. v. Howe, 116 S.Ct. 1065 (1996), held that in some circumstances beneficiaries could make personal recoveries from an ERISA fiduciary for breach of fiduciary obligations. In Varity, the Court agreed with our decision in Bixler v. Central Pennsylvania Teamsters Health and Welfare Fund, 12 F.3d 1292 (3d Cir. 1993), that ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes lawsuits for individualized equitable relief for breach of fiduciary obligations.[4] As the Court explained in Varity, "one can read § 409 [29 U.S.C. § 1109] [which establishes liability for breach of fiduciary duty] as reflecting a special congressional concern about plan asset management without also finding that Congress intended that section to contain the exclusive set of remedies for every kind of fiduciary breach."

---

4. In Bixler v. Central Pennsylvania Teamsters Health-Welfare Fund, 12 F.3d at 1298, we upheld the right of an individual beneficiary to recover from a fiduciary, pointing to the narrowness of the Supreme Court's holding in Russell, 473 U.S. 134, 105 S.Ct. 3085. We stressed ERISA's grounding in the law of trusts, and reiterated that "fundamental in the law of trusts is the principle that 'courts will give to beneficiaries of a trust the remedies necessary for the protection of their interests.'" 12 F.3d at 1299 (quoting Russell, 473 U.S. at 157, 105 S.Ct. at 3098) (concurring opinion)). In permitting a beneficiary to bring a direct action for breach of fiduciary duty against the trustees and administrators of an ERISA plan, we concluded that "[a]llowing an injured beneficiary recourse through the courts is, furthermore, essential to fulfilling the purpose of ERISA." Bixler, 12 F.3d at 1299.

10

Varity, 116 S.Ct. at 1077. The Court found this reading "consistent with [ERISA] § 502's overall structure" which provides two "catchalls" which "act as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." Id. at 1077–78. The Supreme Court did caution, however, that in fashioning "appropriate" equitable relief, courts should "keep in mind the special nature and purpose of employee benefit plans, and . . . respect the policy choices reflected in the inclusion of certain remedies and the exclusion of others." Id. at 1079 (citations and internal quotation marks omitted). Where Congress otherwise has provided for appropriate relief for the injury suffered by a beneficiary, further equitable relief ought not be provided.

The Court in Varity distinguished Russell, explaining that Russell was confined to suits under ERISA § 502(a)(2) and did not limit the relief available under ERISA § 502(a)(3) which permits "appropriate equitable relief" to "redress any act or practice which violates any provision of this title." Varity, 116 S.Ct. at 1076 (internal quotation marks omitted). Ream, like the plaintiffs in Varity, has no alternative means of recovering for his losses. In Varity, the plaintiffs were no longer members of the plan and therefore had no "benefits due [them] under the terms of [the] plan." Varity, 116 S.Ct. at 1079; see also ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Nor could they proceed under ERISA § 502(a)(2) because that provision does not allow for individual recovery. See Russell, 473 U.S. at 144, 105 S.Ct. at 3091. Thus, to recover the plaintiffs in Varity had to

11

rely on ERISA § 502(a)(3) which provides for "other appropriate equitable relief," a reliance the Court found justified as there was no ERISA-related purpose for denying a remedy.

Ream is in a position similar to that of the plaintiffs in Varity and he, too, should have a remedy under ERISA § 502(a)(3). He suffered a direct, clearly defined personal loss from the Bank's conduct. Furthermore, this is not a case in which an individual plan beneficiary charges a fiduciary with a breach of fiduciary duties with respect to a functioning plan. In that situation it might be inappropriate to permit a beneficiary to seek personal relief as a recovery by the plan effectively would make the beneficiary whole. We emphasize, therefore, that a court must apply ERISA § 502(a)(3)(B) cautiously when an individual plan beneficiary seeks "appropriate equitable relief."[5] Such caution would be consistent with the concerns the Supreme Court expressed in Varity about a court being too expansive in granting relief. Varity, 116 S.Ct. at 1079.

---

5.    "Appropriate equitable relief" generally is limited to traditional equitable relief such as restitution and injunctions rather than money damages. Hein v. FDIC, 88 F.3d 210, 223-24 & n.11 (3d Cir. 1996). However, ERISA § 502(a)(3) does not "necessarily bar all forms of money damages." Id. at 224, n.11. Here, though the district court seemed to treat Ream's complaint as one seeking money damages, Ream sought only to recover his vested interest in the plan which largely reflected his own contributions. See app. at 298. This relief, regardless of the language in the complaint, easily may be characterized as restitution and the Bank does not contend otherwise. See Howe v. Varity Corp., 36 F.3d 746, 756 (8th Cir. 1994), aff'd, 116 S.Ct. 1065 (1996).

The legislative history of ERISA supports our view that the personal recovery Ream obtained constituted "appropriate equitable relief."

> [ERISA] imposes strict fiduciary obligations on those who have discretion or responsibility respecting the management, handling or disposition of pension or welfare plan assets.  The objectives of these provisions are to make applicable the law of trusts; to prohibit exculpatory clauses that have often been used in this field; to establish uniform fiduciary standards to prevent transactions which dissipate or endanger plan assets; and to provide effective remedies for breaches of trust.

120 Cong. Rec. 15737 (1974) (Comments of Sen. Williams when introducing the Conference Report), reprinted in (1974) U.S.C.C.A.N. 5177, 5186.  This excerpt evidences Congress' intention to impose on ERISA fiduciaries a strict code of conduct to protect adequately pension and welfare plan assets.  Allowing an ERISA trustee to escape liability after disregarding the interests of plan beneficiaries would undermine Congress' intent.  Thus, this case falls squarely within the category of cases the Supreme Court envisioned as necessitating a broad reading of ERISA § 502(a)(3).  The district court was correct in allowing Ream, an ERISA beneficiary, to bring an action seeking individual relief under ERISA § 502(a)(3) against Fulton Bank, an ERISA fiduciary, for breach of its fiduciary duties.

### b. Breach of Fiduciary Duties

The district court was also correct in finding that in the circumstances of this case Fulton Bank breached its fiduciary duties.  Ream claims that the Bank breached these duties in three

13

distinct ways: (1) by transferring the plan funds to Frey with knowledge that: (a) the Company was failing; (b) the Company had failed to make contributions for the two prior years; and (c) Frey was neglecting his duties as plan administrator by failing to communicate with the Bank or even to respond to its correspondence; (2) by resigning as trustee without notifying the beneficiaries that the Company was severely delinquent in making employer contributions; and (3) by failing to notify the beneficiaries that it had resigned as trustee and forwarded the plan assets to Frey. The district court held that Fulton Bank breached its fiduciary duties because, aware that Frey was failing in his fiduciary duties, it nevertheless sent the plan assets to him. In support of its finding, the district court pointed to Frey's lack of cooperation in providing the Bank with information necessary for the administration of the plan, to the Company's consistent tardiness in paying and failure to pay both employee and employer contributions, and to Frey's failure to respond to the Bank's repeated attempts to have Frey appoint a successor trustee and to remit loan payments.

As a fiduciary, Fulton Bank had the duty to perform its functions solely in the interest of the beneficiaries of the plan and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." ERISA § 404(a)(1)(B). A fiduciary's duties under ERISA are based both on ERISA, particularly the prudent person standard as set forth

14

in ERISA § 404, 29 U.S.C. § 1104, and on the common law of trusts. "Congress intended by § 404(a) to incorporate the fiduciary standards of trust law into ERISA, and it is black-letter trust law that fiduciaries owe strict duties running directly to beneficiaries in the administration and payment of trust benefits." Bixler, 12 F.3d at 1299 (quoting Russell, 473 U.S. at 152-53, 105 S.Ct. at 3095-96) (concurring opinion)).

The law of trusts, however, serves as no more than a guide for interpreting ERISA's provisions. "In some instances, trust law will offer only a starting point, after which courts must go on to ask whether, or to what extent, the language of the statute, its structure, or its purpose require departing from common-law trust requirements." Varity, 116 S.Ct. at 1070. This process is necessary because ERISA's standards and procedural protections partly reflect a congressional determination "that the common law of trusts did not offer completely satisfactory protection." Id. Congress passed ERISA, in part, to address the problem of exculpatory clauses in trust documents. See 120 Cong. Rec. 15737 (1974) (Comments of Sen. Williams when introducing the Conference Report), reprinted in (1974) U.S.C.C.A.N. 5177, 5186. Nevertheless, we have stated clearly that an ERISA fiduciary's duties do include the common law duties of trustees:

> Acknowledging, as we do today, that ERISA's fiduciary duty section incorporates the common law of trusts, the appellate court found the duty to disclose material information 'is the core of a fiduciary's responsibility.' [Eddy v. Colonial Life Ins. Co., 919 F.2d 747, 750 (D.C. Cir. 1990)]. As set forth in the Restatement (Second) of Trusts, '[The Trustee] is under a duty to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the

15

> beneficiary needs to know for his protection in dealing with a third person.' Restatement (Second) of Trusts Section 173, comment d (1959). This duty to inform is a constant thread in the relationship between beneficiary and trustee; it entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful.

Bixler, 12 F.3d at 1300.[6]

Under traditional trust law, a trustee is permitted to resign in accordance with the terms of the trust, with the consent of the beneficiaries, or with a court's permission. See Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Secs., Inc., 93 F.3d 1171, 1183–84 (3d Cir. 1996); Restatement of the Law (Second) Trusts § 106. Most of the relevant case law, which involves trustees failing to comply with these requirements, suggests that a trustee may be liable for a breach of fiduciary duty for resigning without providing for a "suitable and trustworthy replacement." Friend v. Sanwa Bank California, 35 F.3d 466, 471 (9th Cir. 1994) (concurring opinion). See Glaziers, 93 F.3d at 1183 ("Courts that have considered the issue have held that an ERISA fiduciary's obligations to a plan are extinguished only when adequate provision has been made for the continued prudent management of plan assets.").

---

6. But we emphasize that the Supreme Court has recognized that trust law does not control completely in the ERISA setting. Varity, 116 S.Ct. at 1070. Consequently, the Court has indicated that courts must create federal common law to flesh out the meaning of ERISA and effectuate fully its meaning and purpose.

Here, there was no provision in the plan requiring the trustee to notify plan participants of the Company's failure to make contributions or of the trustee's intention to resign. But allowing a fiduciary to resign without notice to the plan beneficiaries in a situation in which the fiduciary has information indicating that the beneficiaries may need protection because of the change of trustee would undermine the goals of ERISA. Thus, even if Fulton Bank's resignation complied with the terms of the plan, it would be overly formalistic (and contrary to the explicit statutory directives in ERISA) to hold that the Bank's resignation in the circumstances here necessarily was acceptable behavior for a fiduciary.

Thus, Ream is correct in asserting that: "[a] fiduciary must satisfy ERISA's fiduciary standard of care, in addition to whatever contractual duties may be set forth in the plan documentation." Br. at 20. The Supreme Court has recognized expressly this broad duty of an ERISA fiduciary:

> There is more to plan (or trust) administration than simply complying with the specific duties imposed by the plan documents or statutory regime; it also includes the activities that are 'ordinary and natural means' of achieving the 'objective' of the plan. [Citation omitted.] Indeed, the primary function of the fiduciary duty is to constrain the exercise of discretionary powers which are controlled by no other specific duty imposed by the trust instrument or the legal regime. If the fiduciary duty applied to nothing more than activities already controlled by other legal duties, it would serve no purpose.

Varity, 116 S.Ct. at 1073-74.

We need not decide today whether Fulton Bank could be liable merely because it did not notify the beneficiaries of the

17

plan that the Company was delinquent in failing to make contributions. The issue of whether the Bank could be liable for that omission in itself is not before us as there are other, distinct factors supporting the district court's judgment holding the Bank liable. Furthermore, Ream's loss is not attributable to the Company's failure to make contributions. Moreover, we recognize that it might be unreasonably burdensome on a trustee to give notification to a large number of beneficiaries of every apparent shortcoming of an employer. We also realize that, while we have held that in some circumstances a fiduciary can be liable for failing to notify beneficiaries that an employer is not making required contributions to a plan, Rosen v. Hotel and Restaurant Employees and Bartenders Union, 637 F.2d 592, 600 (3d Cir. 1981), a rule requiring in all cases that a fiduciary notify the beneficiaries when an employer is delinquent in contributions seems to be inappropriate. After all, the delinquency might be nothing more than a quickly remedied clerical oversight. As we pointed out with respect to an analogous situation in Glaziers:

> We do not, of course, hold that one who may have attained a fiduciary status thereby has an obligation to disclose all details of its personnel decisions that may somehow impact upon the course of dealings with a beneficiary/client. Rather, a fiduciary has a legal duty to disclose to the beneficiary only those material facts known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection.

Glaziers, 93 F.3d at 1182.

Glaziers, though clearly distinguishable on the facts, nevertheless has a certain similarity to this case and is useful

18

as a precedent to us. In Glaziers an employee of a brokerage firm left the firm in circumstances of which the firm was aware and which suggested that he was dishonest. Prior to leaving the firm's employ, the employee acted as the firm's representative to the plaintiff employee benefits funds. When the employee left the firm's employ, the firm assigned a new executive to the plaintiffs' accounts but did not inform the plaintiffs of the circumstances surrounding the employee's departure. Subsequently, at the plaintiffs' request, the firm transferred the plaintiffs' funds through an intermediary to a new firm that the departed employee had established, again without advising the plaintiffs of the negative information regarding its former employee. The employee then wasted and stole the plaintiffs' assets. The plaintiffs sued the brokerage firm alleging, inter alia, breach of fiduciary duty under ERISA. The district court granted summary judgment to the brokerage firm holding that if it was a fiduciary it was only with respect to investment advice. Thus the court concluded that the firm could not be liable as its breaches of duty were unrelated to investment advice.

We reversed and remanded the case for the district court to determine whether, in fact, the brokerage firm was a fiduciary. In our opinion we discussed the scope of fiduciary duties. We pointed out that "[u]nder the common law of trusts, a fiduciary has a fundamental duty to furnish information to a beneficiary." Id. at 1180. We criticized the brokerage firm because it "sat silently by knowing that the [plaintiffs] were placing their assets under" the departed employee's control. Id.

19

at 1181.  We cited with approval Restatement (Second) of Trusts §
173, comment (d) (1959), that a fiduciary can have an affirmative
obligation to disclose material facts to a beneficiary which the
beneficiary does not know but needs to know for his protection in
dealing with a third person.  Id. at 1181.  We summed up by
holding that if on the remand the fact-finder determined that the
firm was an ERISA fiduciary it "had a duty to disclose to the
[plaintiffs] any material information which it knew, and which
the [plaintiffs] did not know, but needed to know for [their]
protection."  Id. at 1182.  See also Barker v. American Mobile
Power Corp., 64 F.3d 1397, 1403 (9th Cir. 1995).

Here, Fulton Bank made no effort to ensure the
continued viability of the plan after its resignation.  The Bank
knew that the Company was having financial difficulties and that
it owed significant monies to the plan.  In a file memorandum
dated May 6, 1992, Geoffrey Platt, the Bank's Employee Benefit
Administrator, noted that the Company's controller told him that
the Company was "currently experiencing a severe cash flow
problem."  Platt also pointed out that Frey was late making his
own loan payments.  Thus, Platt recommended that the Bank discuss
resigning because of the Company's delay in remitting
contributions and its "prior history of slow remittance, and an
obvious cash flow problem."  App. at 283.

This knowledge of the Company's problems in conjunction
with Frey's failure to respond to the Bank's numerous attempts to
communicate about the future administration of the plan should
have led the Bank as a reasonably prudent trustee to recognize

20

that turning over the assets to Frey posed a real threat to the plan assets. While the Bank suggests in its brief that it would have had to have been clairvoyant to anticipate that Frey would convert the funds, we think that ordinary common sense should have warned it of this possibility. Indeed, we cannot help but wonder whether, when it turned over the plan's assets to Frey, the Bank would have entrusted him with its own money.

Overall, we think it is clear that the Bank failed to act prudently in sending the plan assets to Frey and neglecting to inform plan beneficiaries of the circumstances -- even when the wife of one beneficiary called and asked specifically about the situation. While we do not hold that the Bank was required to remain as plan trustee, we do hold that it could not appoint Frey as the successor trustee and turn over the assets to him, at least without giving the plan beneficiaries reasonable advance notice that it intended to take these steps and advising the beneficiaries of why it was resigning. If it had given that notice, the beneficiaries would have had the opportunity to take steps to protect the plan assets.

While the parties cannot rerun the course, and it is impossible to know exactly what steps the beneficiaries could or would have taken on the basis of that information, at a minimum they would have been able to attempt to negotiate with Frey for installation of a procedure to secure the funds. Failing that, we believe that they could have sought equitable relief under ERISA § 502(a)(3)(B) on behalf of the plan to the same end. Furthermore, we think it likely that a court would have

21

recognized that placing the fund assets in Frey's hands would have posed a threat to the interests of the beneficiaries and thus have granted relief. In sum, therefore, we conclude that the Bank's breach of fiduciary duties led to Ream's loss and that the district court thus properly granted Ream summary judgment. Consequently, we will affirm its summary judgment.

We caution, however, that our opinion is limited in scope. Certainly, a trustee may resign in accordance with the terms of a plan. Moreover, we do not hold that a resigning trustee always must investigate a successor trustee. Thus, this case probably would have been different if the Bank had turned the plan assets over to a reputable financial institution and the assets thereafter were converted. We also recognize that we might have reached a different result if the Bank had made a full disclosure to the beneficiaries of the circumstances leading to its resignation before it resigned and the beneficiaries did not take steps to protect the plan assets. Consequently, we emphasize that we affirm the district court because of the convergence of the circumstances in this case that led to Ream's loss.

### III. CONCLUSION

In view of the aforesaid, the order for summary judgment of April 1, 1996, will be affirmed.[7]

---

7.    The parties have treated the appeal as if it included an appeal from the damages judgment entered April 15, 1996. Thus, we effectively are affirming that judgment.