Richard **GODSHALL** and Steven Cusano, Individually and on Behalf of All Others Similarly Situated,

v.

The **FRANKLIN MINT COMPANY** et al.

No. 01–CV–6539.

United States District Court, E.D. Pennsylvania.

Sept. 24, 2003.

Alan M. Sandals, Sandals & Associates PC, John J. Grogan, Sandals & Langer LLP, Nancy O' Mara Ezold, Nancy O'Mara Ezold, Bala Cynwyd, PA, for Plaintiff.

Jerome A. Hoffman, Dechert LLP, Matthew L. Wiener, Dechert, Price & Rhoads, Philadelphia, PA, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

RUFE, District Judge.

Before the Court is the Motion for Partial Summary Judgment of Defendants The Franklin Mint, Roll International Corporation, and the Administrative Committee of The Franklin Mint, John Morton, Cathie Powers, Keith Ramnath, Richard Tomasetti, John Wille, and Heather Badt.

### FACTUAL BACKGROUND

Beginning in or about 1988, The Franklin Mint ("The Mint"), which creates and markets consumer-oriented collectibles, began hiring freelance workers to perform the same or similar tasks as employees. According to Plaintiffs' Amended Complaint, the freelancers were treated in the same fashion as other workers but were wrongfully excluded from participation in The Mint's ERISA and non-ERISA benefits plans. Plaintiffs Richard Godshall and Steven Cusano allege that The Mint both interfered with their ability to participate in the plans and that The Mint misled them into believing that it was lawful to exclude them.

The record reflects that Plaintiffs knew that the fringe benefits at issue were available *only to employees*. In fact, Plaintiffs signed written contracts specifically designating themselves as independent contractors. Moreover, Plaintiffs acknowledge that they never requested to be re-classi-

fied as employees.[1] Plaintiffs also repeatedly represented to the Internal Revenue Service that they were "self-employed freelancers" and, on the basis of these representations, allegedly took thousands of dollars in tax deductions.[2] Additionally, Plaintiffs maintained their own health insurance coverage throughout their affiliation with the Mint.

Plaintiffs' Amended Complaint advances the following claims against Defendants:

Count I—Violation of ERISA Fiduciary Duties

Count II—Unlawful Interference with ERISA Benefits

Count III—State Law Claims Regarding Non–ERISA Benefits

Count IV—Violation of Federal Insurance Contributions Act

Count V—Conditional Claim for Retroactive Benefits Under ERISA Plans

Defendants generally deny the allegations and assert numerous defenses, including the failure to state a claim upon which relief may be granted; the statute of limitations; laches; waiver/estoppel; failure to exhaust administrative remedies; and lack of standing.

Presently before the Court is Defendants' Motion for Partial Summary Judgment in which Defendants seek judgment on Count I only. Defendants maintain that they are entitled to the entry of judgment in their favor on grounds that (1) Plaintiffs' Section 502(a)(3) claim is improper since it is actually a claim for denial of benefits that must be advanced under Section 502(a)(1)(B); (2) that any Section 502(a)(3) recovery for monetary relief is precluded by the Supreme Court's recent decision in *Great–West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002); and (3) that Count I is time barred.

## STANDARD OF REVIEW

Summary judgment is appropriate when the record discloses no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the facts must be viewed in the light most favorable to the nonmoving party. *Id.* at 248, 106 S.Ct. 2505.

## DISCUSSION

Count I is advanced pursuant to Section 502(a)(3) of ERISA, which authorizes a civil action in two circumstances:

(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).

To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that the defendants were fiduciaries and that they breached their fiduciary obligations. *Varity Corp. v. Howe*, 516 U.S. 489, 498, 116 S.Ct. 1065, 134

---

1. Defendants argue that the freelancers received a higher hourly pay rate than employees in consideration for their classification as independent contractors. While this may be factually accurate, there is no support for this assertion in the present record. Accordingly, the Court has not considered this argument.

2. With respect to the tax issue, Plaintiffs assert that they had no choice but to file as "self-employed persons" since The Mint issued them 1099's—instead of IRS Form W–2's—and failed to make the required FICA/FUTA withholdings from their paychecks. Plaintiffs also point to a host of evidence—including telephone directories and business cards-in support of their claim that The Mint treated employees and freelancers identically.

L.Ed.2d 130 (1996). ERISA requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). Benefit plan trustees have a duty to ensure that a plan receives all funds to which it is entitled so that those funds may be used on behalf of participants and beneficiaries. *Diduck v. Kaszycki & Sons Contractors, Inc.*, 874 F.2d 912, 917 (2d Cir.1989). Thus, a trustee has a duty to investigate the identity of beneficiaries when the trust documents do not clearly identify the beneficiaries. *See Central States v. S.E. & S.W. Areas Pension Fund v. Central Transp., Inc.*, 472 U.S. 559, 571, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985).

Section 2.2 of The Franklin Mint Pension Plan, which was implemented in 1986, provides, in relevant part, as follows:

> 2.2 *Special Rules for Participation.* No Employee shall be eligible to participate in this Plan who:
>
> \* \* \* \* \* \*
>
> (c) is not an Employee of the Company or a Participating Company; or
>
> \* \* \* \* \* \*
>
> (e) is a "leased employee" in accordance with Code section 414(n), *i.e.*, is not an Employee of an Affiliated Company and who provides services to an Affiliated Company, if (1) such services are provided pursuant to an agreement between the Affiliated Company and any other person, (2) such person has performed such services for the Affiliated Company on a substantially full-time basis for a peri-

od of at least one year, and (3) such services are of a type historically performed by Employees.

The Franklin Mint Pension Plan (Jan. 1, 1986). Subsequent revisions in 1993 and 1995 did not change the substance of the above-quoted exclusions. The Franklin Mint 401(k) Savings Plan, implemented on February 5, 1991 and also amended in 1993 and 1995, contained very similar language regarding participation, excluding any "leased employee, within the meaning of section 414(n)(2) of the Code." [3]

The language in The Mint's plans is analogous to language in the employee benefits plan in *Burrey v. Pacific Gas & Electric Co.*, 159 F.3d 388 (9th Cir.1998). In *Burrey*, the ERISA plan incorporated by reference the definition of "leased employee" found in the Internal Revenue Code ("I.R.C."). The *Burrey* court noted that neither Section 414(n) nor ERISA defines *employee* and accordingly the court utilized the common law definition. The court reasoned that under the I.R.C. a *leased employee* was any person who is not a common law employee of the recipient and satisfies the three enumerated requirements in Section 414(n). Because the employer's plan incorporated the I.R.C. definition of the term *employee* for determining who was excluded, persons who met the definition of common law employees were not excluded from participation. *Id.* at 393–94.

In the case at bar, whether Plaintiffs were common law employees of The Mint is a material issue of fact which cannot be summarily decided. In the event that Plaintiffs are able to establish that they were common law employees of The Mint upon consideration of the factors set forth in *Nationwide Mutual Insurance Co. v.*

---

**3.** The Mint also had Medical, Disability, Life Insurance, and other welfare benefits plans. Plaintiffs submit that a more comprehensive review of the welfare plans must await further discovery.

*Darden,* 503 U.S. 318, 323, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992),[4] Plaintiffs could succeed in establishing that Defendants breached their fiduciary duties under ERISA by failing to properly apply the plans to eligible employees and by failing to identify all employees eligible under the plans.[5]

### A. Whether Plaintiffs' Claims Must Be Advanced Pursuant to Section 502(a)(1)(B).

 Defendants assert that because Plaintiffs are seeking denied benefits, they must proceed under Section 502(a)(1)(B) of ERISA[6] and therefore cannot maintain a claim under the catch-all "appropriate equitable relief" provision of Section 502(a)(3). Plaintiffs counter that because they are not now, and never were, participants or beneficiaries under The Mint's benefits plans, they never had the ability to seek recovery of benefits under Section 502(a)(1)(B). If they are not permitted to proceed under Section 502(a)(3), Plaintiffs claim that they will have no means to seek redress for the alleged fiduciary violations. Plaintiffs argue that the facts of this case are analogous to *Varity v. Howe,* 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), where plaintiffs—like the ones in the case at bar—were not participants and

therefore were incapable of recovering benefits under Section 502(a)(1)(B). Plaintiffs argue that the only way in which they can get full and adequate relief would be through Section 502(a)(3).

Because the plain language of the Amended Complaint declares that Defendants violated their fiduciary duties, including duties to act solely in the interest of the participants and beneficiaries; to administer the plans in accordance with their written terms; and to identify and enroll all persons who are eligible; the Court will construe Count I as a breach of fiduciary claim rather than a claim for benefits. *See Curcio v. John Hancock Life Ins. Co.,* 33 F.3d 226, 238 (3d Cir. 1994) (where fiduciary breach prevented plaintiff's husband from obtaining supplemental life insurance coverage, no denial of benefits claim was possible); *Tinley v. Gannett Co., Inc.,* No. 99–484, 2002 WL 531556 at *3, 2002 U.S. Dist. LEXIS 6826 at *8 (D.Del. Mar. 25, 2002) (concluding that misclassification claim constituted a breach of fiduciary claim).

### B. Whether the Claims Are Barred by *Knudson.*

 In 2002, the United States Supreme Court decided *Great–West Life & Annuity Insurance Co. v. Knudson,* 534

---

**4.** *Darden* sets forth the "right to control test," which consists of twelve considerations: (1) the skill required; (2) the source of instrumentalities and tools; (3) the location of the work; (4) the duration of the relationship between the parties; (5) whether the hiring party has the right to assign additional projects to the hired party; (6) the extent of the hired party's discretion over when and how long to work; (7) the method of payment; (8) the hired party's role in hiring and paying assistants; (9) whether the work is part of the regular business of the hiring party; (10) whether the hiring party is in business; (11) the provisions of employee benefits; and (12) the tax treatment of the hired party. *Id.* at 323–24, 112 S.Ct. 1344.

**5.** The fact that Plaintiffs' contracts specifically described them as "independent contractors" is not dispositive. *See Vizcaino v. Microsoft Corp.,* 120 F.3d 1006 (9th Cir.1997) (*en banc* ); *Daughtrey v. Honeywell,* 3 F.3d 1488 (11th Cir.1993); *Holt v. Winpisinger,* 811 F.2d 1532 (D.C.Cir.1987).

**6.** Section 502(a) provides, in part, as follows:
 A civil action may be brought—
 (1) by a participant or beneficiary—
 (B) to recover benefits that due him under the terms of his plan, to enforce rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.
 29 U.S.C. § 1132.

U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) and held that only equitable relief is available under the catchall provision in Section 502(a)(3) (authorizing a civil action by a participant, beneficiary or fiduciary to obtain appropriate equitable relief violations). In a 5–4 decision, the Supreme Court found that insurance companies' efforts to seek reimbursement through a provision under an ERISA plan was not equitable in nature. Since the claim sought to compel the defendant to pay a sum of money, the *Knudson* court found that it was a claim for money due and owing under a contract—quintessentially an action at law. Because *Knudson* was a non-fiduciary case that centered around an insurer's subrogation rights, however, there is a dispute over whether the holding applies to fiduciary cases.

Plaintiffs assert that *Knudson* cannot silently overrule Third Circuit precedent regarding the role of equitable relief, such as equitable restitution, in an ERISA fiduciary duty case. Plaintiffs note that other courts which have recently faced this issue have concluded that *Knudson* does not bar "equitable restitution" claims. *See Parke v. First Reliance Standard Life Ins. Co.*, No. 99–1039, 2002 WL 31163129 (D.Minn. Sept.25, 2002) (allowing claim to restore funds due under plan); *White v. Martin*, No. 99–1447, 2002 WL 598432 (D.Minn. Apr.12, 2002) (allowing action seeking funds that belong to plan members); *Zack v. Hartford Life and Accident Ins. Co.*, No. 01–2430, 2002 WL 538851 (D.Kan. Mar.20, 2002) (allowing plaintiff to amend complaint to include breach of fiduciary duty claim seeking payment of monetary damages).

This Court does not read *Knudson*[7] as completely foreclosing the possibility that a transfer of money may be ordered in the context of an action in equity maintainable under Section 502(a)(3). *See, e.g., Ream v. Frey*, 107 F.3d 147, 153 (3d Cir.1997) (noting that Section 502(a)(3) "does not necessarily bar all forms of money damages"). *Knudson* left open the possibility that an action for "equitable restitution" might be sustained under Section 502(a)(3) "where money or property belonging in good conscience to [a] plaintiff could clearly be traced to property or funds in [a] defendant's possession." *Knudson*, 534 U.S. at 213, 122 S.Ct. 708.[8] The prayer for relief in Plaintiffs' Amended Complaint seeks, *inter alia*, a declaration that Defendants violated their fiduciary duties, restitution and disgorgement, and an order enjoining Defendants to identify and enroll in the ERISA plans all persons who are currently eligible to participate in any plan or program but who are being misclassified by Defendants. Accordingly, the Court rejects Defendants' argument that Count I is barred by *Knudson*.

---

7. In *Knudson*, the United States Supreme Court held that Section 502(a)(3) did not authorize an employee benefit plan to bring an action for specific performance of the reimbursement portion of the plan or to compel a plan beneficiary who had recovered from a tortfeasor to make restitution to the plan for benefits it had paid. *Knudson*, however, turned on the fact that the personal injury proceeds in question had already been paid out. Based upon that fact, this Court distinguishes *Knudson*.

8. While the Third Circuit recently noted in *dictum* in *Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450, 457 n. 3 (3d Cir. 2003) that restitution and disgorgement claims are likely barred by the Supreme Court's decision in *Knudson*, the court in that case made no conclusion regarding the fiduciary status of the HMO defendant. More recently, in *Burstein v. Retirement Account Plan for Employees of Allegheny Health Education and Research Foundation*, 334 F.3d 365 (3d Cir.2003), the Third Circuit reversed the dismissal of fiduciary breach claims against a fiduciary plan administrator and gave no indication that *Knudson* created an impediment to the prosecution of those claims.

### C. Whether Plaintiffs' Claims are Barred by the Applicable Statute of Limitations.

▮ Finally, Defendants assert that they are entitled to the entry of summary judgment based upon the statute of limitations. The applicable statute of limitations provides as follows:

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.

▮ The three-year statute of limitations period in 29 U.S.C. § 1113(2) is triggered by "actual knowledge" of a breach or violation. A two-prong test is used to determine when a plaintiff possesses actual knowledge. *See Gluck v. Unisys Corp.*, 960 F.2d 1168, 1177 (3d Cir.1992). Actual knowledge of a breach or violation requires not only a showing that the plaintiff actually knew of the events that occurred which constituted the breach, but also that he was aware that those facts supported a cause of action under ERISA. *Richard B. Roush, Inc. Profit Sharing Plan v. New England Mut. Life Ins. Co.*, 311 F.3d 581, 585 (3d Cir.2002); *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 788 (3d Cir.2001); *Gluck*, 960 F.2d at 1178.

Because the statute of limitations is an affirmative defense and because Defendants are the movants for summary judgment, the burden of proof that the statute of limitations bars Plaintiffs' claims rests with Defendants. *See Roush*, 311 F.3d at 585. Defendants assert that Plaintiffs possessed actual knowledge of the alleged fiduciary breach when The Mint initially engaged Godshall and Cusano in September of 1994 and May of 1995, respectively, because both Plaintiffs knew that they were being classified as freelancers instead of employees and that they would not receive employee benefits. The record reflects that both Plaintiffs, upon being engaged, were displeased with their classification and that they were aware that The Mint had benefits-eligible employees working under the same terms and conditions as freelancers.

In *Tinley v. Gannett Company, Inc.*, No. 99–484, 2002 WL 531556, 2002 U.S. Dist. LEXIS 6826 (D.Del. Mar. 25, 2002), a case from this circuit, the Honorable Gregory M. Sleet of the District of Delaware addressed the statute of limitations issue in an ERISA misclassification case. In *Tinley*, various independent contractors brought claims against a newspaper publisher alleging violations of ERISA due to the failure to include them in an employee benefits plan. The plan, originally implemented in 1975, was amended in 1976 to exclude independent contractors. In 1988, the plaintiffs sent a letter to the publisher stating that the company should recognize that they were employees and give them the same benefits as other employees. *Id.*, 2002 WL 531556 at *3, 2002 U.S. Dist. LEXIS 6826 at *5. In ruling on the statute of limitations, Judge Sleet wrote:

The gravamen of the plaintiffs' breach of fiduciary duty claim is that the defen-

dants misclassified them as independent contractors rather than employees. Thus, the plaintiffs' actions accrued at the time they received actual knowledge of the alleged misclassification. The plaintiffs' 1988 letter to Gannett implores the company to "give us [the independent contractor plaintiffs] the same benefits as other employees." The letter demonstrates the plaintiffs' awareness that the company did not classify them as employees. In this case, then, the record demonstrates that each plaintiff had actual knowledge of the misclassification as early as 1988. . . .

*Id.*

The *Tinley* court ruled that the actions accrued in 1988 when they received actual knowledge of the misclassification. The court found that the 1988 letter to the publisher demonstrated the plaintiffs' actual knowledge of the misclassification and entered summary judgment in favor of the defendant. Significantly, the *Tinley* court did not find that the statute of limitations began to run when the plan which purportedly excluded the plaintiffs was implemented or when the plaintiffs had knowledge of the amendments to the plan.

█ While there is ample evidence that Plaintiffs knew they were being classified as independent contractors or freelancers, Defendants have failed to point to facts that establish that Plaintiffs possessed knowledge of all facts necessary to understand that some claim may exist under ERISA when they were hired in 1994 and 1995. The exclusion of independent contractors from employee benefits plans is not a *per se* violation of ERISA, provided that the terms of the relevant plans actually permit such exclusions, and that an ERISA claim may exist is not patently obvious. The only way for a common law

employee to discover the breach of fiduciary duty is to have access to the eligibility definition in the plans themselves. This Court will not infer that a worker who has been classified as an independent contractor and denied benefits on that purported basis has actual knowledge of a fiduciary breach since "[t]he disclosure of a transaction that is not inherently a statutory breach of fiduciary duty . . . cannot communicate the existence of an underlying breach." *Waller v. Blue Cross of California,* 32 F.3d 1337, 1341 (9th Cir.1994) (quoting *Fink v. National Sav. & Trust Co.,* 772 F.2d 951, 957 (D.C.Cir.1985)).

The Third Circuit has emphasized that 29 U.S.C. § 1113 "sets a high standard for barring claims against fiduciaries prior to the expiration of the section's six-year statute of limitations." *Gluck,* 960 F.2d at 1176. Because there is insufficient evidence establishing that Plaintiffs had knowledge of their right to assert an ERISA claim, the case at bar is distinguishable from *Tinley.* Due to the existence of genuine issues of material fact over whether Plaintiffs had actual knowledge of the facts necessary to discern a claim for a breach of fiduciary duty within the meaning of *Roush* and *Gluck,* the entry of summary judgment is not appropriate.[9] This ruling is made without prejudice to Defendants' right to raise the statute of limitations defense upon a more complete record at trial.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' Motion for Partial Summary Judgment. An appropriate Order follows.

9. On February 20, 2000, The Mint entered into an agreement with several freelancers, including Godshall and Cusano, tolling the statute of limitations. Accordingly, Plaintiffs' claims are not barred by the six-year statute of limitations found in 29 U.S.C. § 1113(1).

### *ORDER*

AND NOW, this _____ day of September, 2003, upon consideration of Defendants' Motion for Partial Summary Judgment [Doc. No. 28], Plaintiffs' response thereto, and Defendants' Reply Brief, it is hereby ORDERED that the Motion is DENIED.