# United States Court of Appeals
## For the First Circuit

No. 00-2386
No. 00-2387

ANTONIETTA LAROCCA, et al.,
Plaintiffs, Appellants/Cross-Appellees,

v.

BORDEN, INC.,
Defendant, Appellee/Cross-Appellant, and

NORTHERN TRUST COMPANY,
Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. Circuit Judge]

Before

Torruella, Circuit Judge,
Gibson,* Senior Circuit Judge,
and Lipez, Circuit Judge.

Robert S. Wolfe, with whom Wolfe Associates was on
brief, for appellants.
Mark W. Batten, with whom Bingham Dana, LLP was on
brief, for appellees.

January 8, 2002

_____
    *Hon. John R. Gibson, of the Eighth Circuit, sitting by
designation.

**LIPEZ, Circuit Judge**. This case concerns the remedies due for violations of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461. The parties have stipulated that Borden, Inc. improperly terminated the plaintiffs from Borden's Total Family Protection Plan (hereafter "the Plan") of life, health, dental, and disability insurance. They only dispute the remedy due under the law. Borden contends that the plaintiffs are only due reinstatement in the Plan, and reimbursement for expenses incurred that would have been covered by the Plan. For the most part, the district court agreed with this position. On appeal, plaintiffs assert that this remedy is inadequate and that they are entitled to additional equitable relief. On cross-appeal, Borden challenges the one element of the district court's award which could not be characterized as benefits due under the terms of the Plan--an equitable award of medical costs to an estate, in trust for the hospital-creditor, even though the estate was no longer legally obliged to pay those costs. We deny the plaintiffs' appeal and rule for Borden on the cross-appeal.

## I.

Antonietta LaRocca is the named plaintiff in a group of sixty retired workers (and some of their relatives) who alleged

violations of ERISA by their former employer, Borden, Inc.[1]  The plaintiffs alleged that Borden illegally terminated health, life, disability, and dental insurance due to them under the terms of the Plan.[2]  Borden and Plan beneficiaries fund the Plan with contributions.  Borden administers the Plan and acts as fiduciary.  Borden also determines eligibility for benefits.[3]  In addition to covering the plaintiffs when they were employed at Borden, the Plan also provided for benefits to be paid to them upon their retirement.

The plaintiffs are former Borden employees eligible for retiree benefits who worked in Borden's Deran Confectionary Division (and their covered relatives).  Borden sold this division to Great American Brands (GAB) on April 8, 1993.  The sales contract stipulated that GAB was to continue benefits

---

[1]Antonietta LaRocca is the executrix of the estate of Guiseppe Paone, which is the successor-in-interest of Mr. Paone, a former Borden employee.

[2]The plaintiffs also sued Northern Trust Co. and the Metropolitan Life Insurance Co.  In March 1996, all parties stipulated to the dismissal of the claims against Metropolitan Life.  In September 1999, the District Court granted Northern Trust's motion for summary judgment on all counts because Northern acted as a directed trustee, merely holding Plan assets.  Northern had no responsibility for the eligibility determinations of which plaintiffs complain.

[3]According to the Plan, Borden "shall, with the consent of the Benefits Committee, designate the group or groups of Employees who shall be eligible for inclusion in this Plan." Plan, § 2.1.

equivalent to those provided under the Plan. On June 27, 1994, GAB declared bankruptcy under Chapter 11. Concerned that GAB would be unable to honor its commitment, the plaintiffs sought benefits from Borden unsuccessfully.

As a result of this denial, several of the plaintiffs did not have insurance when they were ill. One of the plaintiffs, Guiseppe Paone, received a liver transplant before dying on June 16, 1994. His medical bills at the New England Medical Center (NEMC) totaled $258,571.42. NEMC sought payment from his estate, but did not sue for the debt. A statute of repose subsequently rendered the Paone estate immune from liability for the debt.

The New England Confectionery Company (NECCO) purchased the relevant GAB assets on September 1, 1994, and offered health insurance to the thirty-one plaintiffs who accepted employment with the firm. Twenty-one of them decided to participate.

On October 11, 1994, many of the plaintiffs filed with Borden an appeal of the denial of benefits. After unsuccessful settlement efforts, the plaintiffs filed a complaint on November 17, 1995 in the federal court for the District of Massachusetts. During discovery, the parties stipulated that Borden improperly terminated the plaintiffs from the Plan. Unable to agree on a settlement, however, they requested the district court's

assistance in determining the remedies available under ERISA by filing cross-motions for partial summary judgment. The central question was whether the plaintiffs were eligible for equitable relief beyond the relief offered by Borden in settlement negotiations. After holding a hearing on the motions, the district court issued a Memorandum and Order on March 20, 1998 essentially siding with Borden's position on the proper remedies. The district court ordered one remedy not offered by Borden: that the company "reimburse the bills incurred by plaintiff Guiseppe Paone, such sums to be paid to his estate in trust for the benefit of New England Medical Center."

Over a year after this ruling, the plaintiffs moved to amend their complaint to allege violations of state law and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq. The district court denied the motion. On September 25, 2000, it entered an Order and Final Judgment incorporating its earlier ruling.

On appeal, the plaintiffs demand further equitable relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including the cash value of the premium payments that Borden avoided by failing to pay them. They also appeal the denial of their third motion to amend their complaint. On cross-appeal, Borden claims that the court cannot award full medical expenses to Guiseppe

Paone's estate because the estate no longer has a legal obligation to pay these bills. We address the demand for further equitable relief in Part II, Borden's cross-appeal in Part III, and the denial of the motion to amend in Part IV.

**II.**

The parties have stipulated to a joint statement of material facts. The issue that we review here--the proper scope of remedies due to the plaintiffs--is a legal issue that we review de novo. We first compare the remedies demanded by the plaintiffs with the relief ultimately awarded by the district court. We then turn to the statutory language in order to assess the legal basis for this relief. Applying this language and judicial interpretations of it, we conclude that the plaintiffs are only entitled to the relief ordered by the district court.

**A. Plaintiffs' Demands for Relief**

On February 4, 1997, Borden filed an Offer of Judgment offering the plaintiffs several forms of relief. Prospectively, Borden offered reinstatement of each plaintiff to the Plan. Retrospectively, Borden offered to pay medical bills paid or still due and to pay the excess of any copayments or premiums for replacement insurance over the amounts the plaintiffs would have paid under the Plan.

-6-

The plaintiffs demanded significantly more. They proposed retrospective relief designed not only to compensate those terminated from the Plan for replacement insurance coverage and to reimburse them for out-of-pocket medical expenses, but also to force Borden to disgorge the amount by which the company was "unjustly enriched" by failing to pay for insurance coverage after the improper terminations.[4] The plaintiffs' expert assessed the gross value of the coverage wrongfully withheld at $5,565,723 as of October 19, 1998. Given that the plaintiffs would have paid $2,762,352 in employee contributions due the Plan, the plaintiffs' expert estimated that the net value of the employer's contribution left unpaid by Borden was $2,803,371.

Plaintiffs further argued that Borden's proposed prospective relief was inadequate because many of them distrust Borden, Inc., and the Plan it sponsors. These plaintiffs have developed close relationships with other insurance plans and the health

_____

[4]The plaintiffs do not ask for the sum of these remedies, but rather for medical expenses for those plaintiffs whose expenses are greater than their share of the disgorgement remedy, and the disgorgement remedy less amounts paid for medical expenses for those for whom the opposite is the case. As they put it on appeal, they request that Borden "be ordered to pay to each of the named Plaintiffs [their medical expenses]...[and] [t]hat Borden be ordered to pay to each of the named Plaintiffs [their share of the disgorgement remedy.] To the extent that monies are due any plaintiff [for medical expenses], Borden shall receive that amount as a credit toward the amount that Plaintiff is entitled to receive [as his portion of the disgorgement remedy]."

care providers covered by them.  For them, plaintiffs argued, "monetary relief" should be made "available to the retirees and their spouses as an alternative remedy" because many of the plaintiffs "do not wish to leave their current insurer" (emphasis in the original). Therefore, the plaintiffs requested that the court order, "at the option of each plaintiff," either reinstatement to the Plan or payment of the future value of Plan coverage.

With one exception, the district court agreed with Borden's position on the scope of the available remedies.  To redress past harms, the district court ordered Borden 1) to reimburse the plaintiffs for medical expenses that they incurred which would have been covered by the Plan; 2) to pay the difference between plaintiffs' payments for substitute insurance and the amount they would have paid had they continued membership in the Plan, and 3) to pay the medical expenses of Guiseppe Paone (the one exception).  The district court ordered Borden to treat "[e]ach of the plaintiffs...as if he or she had retired on April 8, 1993, with an effective retirement date of May 1, 1993."  The district court chose the April 8, 1993 date because Borden sold the Deran division to GAB on this date and ostensibly arranged for GAB to continue benefits equivalent to those provided under the Plan.

To provide prospective relief, the district court ordered Borden to give the plaintiffs the opportunity for reinstatement to the Plan. It did not give the plaintiffs the option of choosing the cash value of insurance coverage instead of reinstatement.

> Any plaintiff who did not waive retiree coverage under the Borden, Inc. Total Family Protection Plan ("The Plan"), who was not terminated from the Plan for nonpayment of premiums or other failure to comply with Plan requirements (such failure not to include working for a successor employer), and who has requested reinstatement to the Plan in accordance with the Court's orders, will be deemed eligible for retiree medical insurance and retiree life insurance under the terms of the Plan as if he or she had retired effective May 1, 1993. Plaintiffs who have elected reinstatement will be responsible for health insurance premiums and other contributions at levels they would be paying today if they had retired on April 8, 1993, and those plaintiffs will receive medical and life insurance benefits in accordance with the terms of the Plan.

This prospective reinstatement is real. That is, it permits plaintiffs to renew insurance coverage under the Borden Plan for future protection. The retrospective reinstatement is constructive.[5] That is, it is a remedial device which permits the court to award benefits due under the terms of the Plan for the period of wrongful termination.

## B. Remedies Available Under ERISA

---

[5]As noted, the period of constructive reinstatement starts on April 8, 1993. The record does not clearly indicate the end date. It appears to be October, 1998.

Two civil enforcement provisions of ERISA are relevant to this appeal. 29 U.S.C. § 1132(a). The first permits a beneficiary "to recover benefits due to him under the terms of his Plan . . . ." Id. § 1132(a)(1)(B) ("a(1)"). The second provides that "a participant, beneficiary, or fiduciary" may sue "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the Plan." Id. § 1132(a)(3) ("a(3)").

The plaintiffs argue that their requests for disgorgement and for the opportunity to receive the cash value of reinstatement are "appropriate equitable relief" under Section a(3). The statutory language invites a two-step inquiry to evaluate this claim: 1) is the proposed relief equitable, and 2) if so, is it appropriate? We address each question in turn.

The Supreme Court has held that, in the context of ERISA, "equitable relief" includes "those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." Mertens v. Hewitt Assocs., 508 U.S. 248, 256 (1993) (emphasis in original). Although both damages and restitution may remedy the same injury, "[d]amages differs from restitution in that damages

-10-

is measured by the plaintiff's loss; restitution is measured by the defendant's unjust gain."  Dan B. Dobbs, <u>Law of Remedies</u> § 3.1, at 208 (2d ed. 1993).  Restitution is an equitable remedy "providing a tool for courts to use when one party 'has been unjustly enriched at the expense of another.'" <u>Kwatcher</u> v. <u>Mass. Serv. Employees' Pension Fund</u>, 879 F.2d 957, 967 (1st Cir. 1989), quoting <u>Restatement of the Law of Restitution</u> § 1 (1937). The plaintiffs have characterized the bulk of the relief they seek on appeal--approximately $2.8 million in premiums which Borden would have had to pay had it covered the plaintiffs over the time period in question--as unjust enrichment, the disgorgement of which is restitution.  They also justify their proposed prospective remedy (giving plaintiffs the choice between reinstatement to the Plan or its cash value) as a way of avoiding unjust enrichment by Borden.  By measuring relief with reference to the amount Borden has gained (and would gain) by terminating coverage, the plaintiffs propose equitable relief in the form of restitution to prevent unjust enrichment.[6]

---

[6]In arguing for restitution to avoid Borden's unjust enrichment, the plaintiffs allege that the wrongful termination of their insurance coverage exacerbated some of the plaintiffs' health problems and led others to avoid getting medical care because of their uncertain insurance status.  The plaintiffs use these allegations of harm to justify their demand for restitution.  They do not seek compensation for these harms in the form of damages that are measured by the losses inflicted by the harm.  Plaintiffs understand that <u>Massachusetts Mut. Life</u>

-11-

Nevertheless, such relief is not "appropriate equitable relief" within the meaning of ERISA. 29 U.S.C. § 1132(a)(3) (emphasis added). Clarifying the holding in Mertens, the Supreme Court has ruled that Section a(3)'s "'catchall' provisions act as a safety net, offering appropriate equitable relief for injuries caused by violations that § [1132] does not elsewhere adequately remedy." Varity Corp. v. Howe, 516 U.S. 489, 512 (1996). Varity circumscribes the applicability of Section a(3); "[W]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief . . . ." Id. at 515.

Following this guidance, federal courts have uniformly concluded that, if a plaintiff can pursue benefits under the plan pursuant to Section a(1), there is an adequate remedy under the plan which bars a further remedy under Section a(3). See, e.g., Turner v. Fallon Community Health Plan, Inc., 127 F.3d 196, 200 (1st Cir. 1997) (holding that beneficiary denied benefits could not sue under Section a(3) since the claim was

_____

Ins. Co. v. Russell precludes such claims for extracontractual damages under ERISA. Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 148 (1985) ("In contrast to the repeatedly emphasized purpose to protect contractually defined benefits, there is a stark absence--in the statute [ERISA] itself and in its legislative history--of any reference to an intention to authorize the recovery of extracontractual damages.")

"specifically addressed by [Section a(1)]"); Forsyth v. Humana, Inc., 114 F.3d 1467, 1475 (9th Cir. 1997) (holding that "[e]quitable relief under section 1132(a)(3) is not 'appropriate' because section 1132(a)(1) provides an adequate remedy in this case."); Wald v. Southwestern Bell Corp. Customcare Med. Plan, 83 F.3d 1002, 1006 (8th Cir. 1996); Katz v. Comprehensive Plan of Group Ins., 197 F.3d 1084, 1088-89 (11th Cir. 1999) (holding that even the unrealized prospect of relief under Section a(1) renders relief under Section a(3) unavailable); Tolson v. Avondale Indus. Inc., 141 F.3d 604, 610 (5th Cir. 1998) ("Because [plaintiff] has adequate relief available for the alleged improper denial of benefits through his right to sue the Plans directly under section 1132(a)(1), relief through the application of [s]ection 1132(a)(3) would be inappropriate."). As the Eighth Circuit has stated, when the plaintiff can "bring a claim for benefits under [Section a(1)], . . . equitable relief would not be appropriate . . . [and] she does not have a cause of action under [Section a(3)]." Wald, 83 F.3d at 1006.

Challenging the import of these cases, the plaintiffs argue that equitable relief has been awarded pursuant to Section a(3) in a number of other cases. They point to Jackson v. Truck Drivers Union Local 42 Health and Welfare Fund, 933 F. Supp.

1124 (D.Mass. 1996), United Steelworkers of America v. Newman-Crosby Steel, Inc., 822 F. Supp 862 (D.R.I. 1993), and Ream v. Frey, 107 F.3d 147 (3d Cir. 1997).  The plaintiffs here, like those in Jackson, United Steelworkers, and Ream, were not members of a  plan (and therefore were not eligible for relief under Section a(1)) when they filed suit.  However, the plaintiffs in Jackson, United Steel Workers, and Ream were permanently ineligible for a remedy pursuant to Section a(1) because none of these cases involved a functioning plan.  The plaintiffs here were only ineligible for a remedy pursuant to Section a(1) because they were not members of the Plan when they filed suit.  Although some of the plaintiffs may not want prospective reinstatement in the Plan because they distrust Borden, Inc., none have disclaimed their interest in the opportunity for reinstatement.  Moreover, they have presented no evidence to demonstrate that the Borden Plan is not a viable plan that can pay them the benefits they are due under its terms.

Here, the district court faced a situation similar to that presented in Varity and adopted a comparable remedy.  In Varity, the Supreme Court affirmed a lower court's reinstatement of plaintiffs who had been improperly terminated from their Plan.  516 U.S. at 515.  The Supreme Court observed that "[t]he

-14-

plaintiffs in this case could not proceed under [Section a(1)] because they were no longer members of [their] plan and, therefore, had no benefits due [them] under the terms of [the] plan [pursuant to Section a(1)]," and that "[t]hey must rely on [Section a(3)] or they have no remedy at all." Id. (internal citations and quotation marks omitted).[7] Here, once the district court mandated the plaintiffs' constructive reinstatement (and opportunity for actual reinstatement) to the Plan pursuant to Section a(3), the plaintiffs' claims were governed by the terms of the Plan, as Section a(1) provides.[8]

## C. Inapplicability of the Collateral Source Rule

Recognizing the primacy of the Plan in awarding benefits to plaintiffs after their reinstatement, the district court refused to order Borden to pay for medical expenses already covered by

---

[7]Although the district court said that Section a(1) authorized the reinstatement order, that section only governs remedies for those who are members of a plan. Reinstatement is an equitable remedy based on Section a(3).

[8]Recognizing that they might only be eligible for relief pursuant to Section a(1), the plaintiffs have tried to recharacterize the disgorgement remedy they seek as a benefit due under the Plan. They argue that they still deserve to recover the employer's contributions which Borden failed to make because "the Plan coverage itself is the 'benefit due' to the retirees and spouses." This argument reflects a fundamental misunderstanding: the benefit due from an insurance plan is the benefit paid in case a covered event occurs, not the coverage itself. Plaintiffs' expansive theory of the benefits due under the Plan is untenable.

alternative insurance coverage because of Plan provisions coordinating coverage with other insurance to avoid double payments. Plaintiffs invoke the collateral source rule to challenge this ruling.

The collateral source rule has traditionally provided "'that benefits received by the plaintiff from a source collateral to the defendant may not be used to reduce that defendant's liability for damages.'" Lussier v. Runyon, 50 F.3d 1103, 1107 (1st Cir. 1995) (quoting 1 Dan B. Dobbs, Law of Remedies § 3.8(1), at 372-73 (2d ed. 1993)). The plaintiffs argue that the collateral source rule makes Borden liable for all of their medical bills, even if alternative sources of insurance have already paid for them. However, ERISA preempts state legislation designed to limit plans' subrogation and coordination of benefits provisions. See FMC Corp. v. Holliday, 498 U.S. 52 (1990); Travitz v. Northeast Dept. ILGWU Health and Welfare Fund, 13 F.3d 704 (3d Cir. 1994). Such preemption applies a fortiori to state common law doctrines (like the collateral source rule) which purportedly alter the benefit limitation provisions of a plan. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 52-57 (1987) (precluding both state claims to recover benefits under an ERISA plan and state claims to recover compensation for harms suffered because of improper

-16-

denial of such benefits).

We recognize that the insurance benefits which are the collateral source subject to the Borden Plan were available only because some of the plaintiffs obtained new insurance coverage in light of the improper termination of their insurance coverage by Borden. The fact remains, however, that this insurance falls under the purview of the coordination of benefits provisions of the Borden Plan. The plaintiffs who obtained alternative sources of insurance were, in effect, mitigating their damages. The law often obliges the victim of a breach of contract to mitigate damages. See, e.g., Restatement (Second) of Contracts § 350 cmt. b (1981). The Borden Plan expressly precludes reimbursement under its coordination of benefits provisions when a claimant's bills are paid by a collateral source. Therefore, the district court ruled properly that a claimant whose medical bills have been paid collaterally cannot demand that the Plan reimburse the claimant for these bills.

**D. The Congressional Balance**

Despite its rulings against the plaintiffs, the district court recognized that the relief it ordered did not address fully plaintiffs' grievances: "Were it not for the limits on remedies imposed by ERISA and by its judicial interpretation, [plaintiffs'] arguments would likely merit the remedy [they]

seek."  This apt observation reflects the balance struck by Congress in its passage of ERISA.  Congress wanted to protect contractually defined benefits.  See Russell, 473 U.S. 134, 148 and n.16 (1985) (citing 120 Cong. Rec. 29196 (1974), reprinted in 3 Subcommittee on Labor and Public Welfare of the Senate Committee on Labor and Public Welfare, 94th Cong., 2d Sess., Legislative History of the Employee Retirement Income Security Act of 1974, p. 4665 (Comm. Print 1976) ("Leg. Hist."); 119 Cong.Rec. 30041 (1973), 2 Leg. Hist. 1633).  But "Congress was [also] concerned lest the cost of federal standards discourage the growth of private pension plans."  Id. at 148 and n.17 (citing H.R.Rep. No. 93-533, at 1, 9 (1973), 2 Leg. Hist. 2348, 2356; 120 Cong. Rec. 29949 (1974), 3 Leg. Hist. 4791; 120 Cong. Rec. 29210-29211 (1974), 3 Leg. Hist. 4706-4707).  Given Congress's careful attention to this balance, the Supreme Court has limited the remedies available pursuant to the "appropriate equitable relief" provisions of ERISA.  Here, ERISA's civil enforcement provisions and their subsequent judicial interpretation required the district court to craft a remedy limited to the benefits due to the plaintiffs under the Plan. No matter how the plaintiffs choose to label their demands on appeal, they are not "appropriate equitable relief" authorized by ERISA.

# III.

The district court ordered Borden to pay past benefits due under the terms of the Plan for all of the plaintiffs but one, the estate of Guiseppe Paone. Mr. Paone died in 1994 after incurring approximately $258,000 of medical expenses at the New England Medical Center (NEMC). The Plan administrator denied coverage, and NEMC unsuccessfully attempted to obtain payment from both Great American Brands and the Paone estate. Although NEMC could have sued Paone's estate to try to recover the money, it did not, and any potential claim for these funds from Mr. Paone's estate is now time-barred. See Mass. Gen. Laws ch. 197, § 9 (establishing one-year statute of repose for claims against estates).

The district court awarded Paone's medical expenses to his estate, to be held in trust for NEMC, stating that "[t]his is a case where 'equity will treat that as done which ought to have been done'" (citation omitted). The court noted that "the executrix of Paone's estate, Antonietta LaRocca, attests that his unpaid debt desecrates her father's memory and that she wishes to receive reimbursement from Borden in trust for NEMC, as her father would never have considered not paying a debt that he owed." Although the district court did not specifically cite Section a(3) as the basis for its award to the estate, the

court's reference to equity suggests that this provision was the basis.

In its order and final judgment, the district court ruled that "Each of the plaintiffs will be treated as if he or she had retired on April 8, 1993, with an effective retirement date of May 1, 1993." As a complement to this order of constructive reinstatement, the court ordered that "Borden, Inc. will pay or cause to be paid by the Plan to designated plaintiffs the amount specified in Exhibit A hereto." One of the designated plaintiffs is Guiseppe Paone. Once a plaintiff like Mr. Paone was constructively reinstated pursuant to Section a(3), the terms of the Plan governed the relief he (or his estate) was due pursuant to Section a(1). The Plan expressly prohibits benefit payments for "services for which there is no charge or legal obligation to pay." Plan §§ 6.14(s) and 15.11(e). Since the Plan does not cover the bills of someone who does not have to pay them, it bars the relief ordered by the district court for the Paone estate in trust for NEMC. Therefore, we must vacate the district court's award.

## IV.

Plaintiffs also argue that the district court abused its discretion by denying them the opportunity to add RICO and state law claims to their complaint. The district court concluded

that such an amendment would be futile. Plaintiffs argue that a recently decided Supreme Court case, <u>Humana Inc.</u> v. <u>Forsyth</u>, 525 U.S. 299 (1999), made their RICO and state law claims viable. We do not address this issue, choosing to affirm the district court's ruling on the basis of timeliness.[9]

Like the plaintiff in <u>Acosta-Mestre</u> v. <u>Hilton Int'l of Puerto Rico, Inc.</u>, 156 F.3d 49 (1st Cir. 1998), the plaintiffs here assert that "mere delay is not reason enough to deny a motion for leave to amend." <u>Id.</u> at 52. Such an argument is "contrary to Supreme Court and circuit precedent [holding that]...'undue delay' in seeking the amendment may be a sufficient basis for denying leave to amend." <u>Id.</u> (quoting <u>Foman</u> v. <u>Davis</u>, 371 U.S. 178 (1962)). The plaintiffs filed the motion to amend after discovery had been completed and after the court had issued an all-but-dispositive ruling on cross-motions for summary judgment. They were given leave twice earlier to amend their complaint. The decision whether to grant leave to amend lies within the District Court's discretion. <u>See Judge</u> v.

---

[9]"We review a denial of leave to amend under Fed.R.Civ.P. 15 for an abuse of discretion and defer to the district court if any adequate reason for the denial is apparent on the record." <u>Grant</u> v. <u>News Group Boston, Inc.</u>, 55 F.3d 1, 5 (1st Cir. 1995), citing <u>Resolution Trust Corp.</u> v. <u>Gold</u>, 30 F.3d 251, 253 (1st Cir. 1994).

<u>City of Lowell</u>, 160 F.3d 67, 79 (1st Cir. 1998).  Given the plaintiffs' delay, the district court did not abuse its discretion in refusing to amend the complaint.

**V.**

ERISA has generated a complex body of law governing the scope of remedies available to those wrongly terminated from plans covered by ERISA.  For the most part, the district court applied the law to this case correctly by limiting relief to the benefits due under the Plan.  However, the district court could not, as a matter of law, grant further equitable relief to the Paone estate because it is not eligible for benefits under the terms of the Plan.  We therefore deny the relief sought by the plaintiffs in their appeal and grant the relief sought by Borden in its cross-appeal, vacating the award to Guiseppe Paone's estate.

**So Ordered.  Each party shall bear its own costs.**