**Not For Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 02-1860

NORTHERN VOYAGER LIMITED PARTNERSHIP;
ONEBEACON AMERICA INSURANCE COMPANY f/k/a/
COMMERCIAL UNION INSURANCE COMPANY,

Plaintiffs, Appellants,

v.

CROSS SOUND FERRY, INC. AND JOHN WRONOWSKI,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Torruella, Circuit Judge,

Campbell and Stahl, Senior Circuit Judges.

Michael J. Rauworth, with whom Cetrulo & Capone LLP were on brief, for appellants.
Thomas J. Muzyka, with whom Robert E. Collins and Clinton & Muzyka, P.C. were on brief, for appellees.

August 5, 2003

**TORRUELLA**, <u>Circuit Judge</u>. Plaintiffs-Appellants Northern Voyager Limited Partnership ("Northern Voyager") and OneBeacon America Insurance Company appeal the dismissal of their claims against Defendants-Appellants Cross Sound Ferry ("Cross Sound") and its president, John Wronowski, in litigation related to the 1997 sinking of the F/T NORTHERN VOYAGER ("NORTHERN VOYAGER"). The district court determined that the plaintiffs, who alleged two violations of Mass. Gen. Laws ch. 93A for unfair trade practices, failed to state a claim for which relief can be granted. We agree.

## I.

The NORTHERN VOYAGER sank off the coast of Gloucester, Massachusetts on November 2, 1997. The sinking was the result of an allegedly faulty rudder dropping out of the vessel, causing severe flooding aboard the NORTHERN VOYAGER.

The NORTHERN VOYAGER, and a sister ship, the F/T NORTHERN TRAVELER ("NORTHERN TRAVELER") were managed by Atlantic Trawlers, Inc., principally by its employee, Jerry Shervo. At some point in 1997, Shervo contacted Thames Shipyard & Repair Company ("Thames") to have repair work performed on the two vessels. Thames is owned and operated by John Wronowski, who also owns Cross Sound. Thames agreed to perform repair work on the NORTHERN VOYAGER and NORTHERN TRAVELER; the repair work included, among other things, withdrawing, refurbishing and reinstalling both rudders in each vessel. During the course of these repairs, the appellants allege

-2-

that two separate incidents occurred which constituted unfair trade practices by the appellees. For clarity's sake, we will present the appellants' two factual scenarios separately and then assess whether either scenario is sufficient to support a claim under Chapter 93A.

**1.     Cross Sound's Subordination of the NORTHERN VOYAGER's Service Needs**

The NORTHERN VOYAGER and NORTHERN TRAVELER were delivered to Thames's shipyard in May and June of 1997 and were raised on drydock together with a third vessel, the NEW LONDON. The NEW LONDON is a passenger and freight ferry owned and operated by Wronowski and Cross Sound. To remove a vessel from drydock, a drydock must be flooded to permit the vessel to float free of the dock. Consequently, when vessels share a drydock, none of the vessels can be returned to service until the repair work for all of them is complete, since prematurely flooding the drydock would also flood any vessel that still had holes in its hull.

Thames completed its repairs of the NEW LONDON prior to completing work on the NORTHERN VOYAGER. According to the appellants, Wronowski and Cross Sound diverted work away from the NORTHERN VOYAGER in favor of completing work on the NEW LONDON. Further, the appellants claim that appellees caused the work on the NORTHERN VOYAGER to be hastened to allow the drydock to be flooded, so that Wronowski could return the NEW LONDON to service more quickly. According to appellants, the appellees' haste resulted in

improper performance on the work of the NORTHERN VOYAGER's starboard rudder. Therefore, under the appellants' theory, the subordination of NORTHERN VOYAGER's interests to those of the NEW LONDON should be deemed an unfair business practice that eventually resulted in the loss of the NORTHERN VOYAGER.

## 2. Failure to Disclose Information Relevant to the Condition of the NORTHERN VOYAGER

The appellees performed similar rudder work on the NORTHERN VOYAGER's sister ship, the NORTHERN TRAVELER, a few weeks prior to the repairs on the NORTHERN VOYAGER. In October 1997, the NORTHERN TRAVELER began to experience steering problems. Cross Sound supervisor Tom Shaughnessy was sent out to investigate. It turned out that the steering problem was caused by the loosening of a retaining nut on the vessel's port rudder. The nut had loosened to the point that the NORTHERN TRAVELER's rudder was on the verge of dropping out of the vessel.

Shaughnessy notified Wronowski about the NORTHERN TRAVELER's rudder problem. Wronowski dispatched Brian Laffey, a Cross Sound employee, to correct the problem. Laffey boarded the NORTHERN TRAVELER, raised the rudder, tightened the rudder nut, and secured it by welding it into place.

When Shervo became aware that the rudder nut had been improperly secured by Thames during the May repairs, he asked Shaughnessy if he should arrange to bring the NORTHERN VOYAGER into port to have her rudders checked. Shaughnessy told him that this

was unnecessary because the problem with the NORTHERN TRAVELER's port rudder was a one-time anomaly.

Nevertheless, despite Shaughnessy's reassurances, there is some evidence that he and Laffey considered the rudder-nut problem to be more than a mere one-time anomaly. Laffey had concerns about the NORTHERN TRAVELER's other rudder. As a result, he sought permission from Shaughnessy to inspect the NORTHERN TRAVELER's starboard rudder. Shaughnessey authorized the inspection and Laffey tightened and rewelded the starboard rudder nut to prevent it from loosening.

The appellants claim that no one from Thames ever informed them of Laffey's concerns. It is the appellants' contention that Cross Sound and Wronowski had a duty to inform Shervo of the likelihood that the NORTHERN VOYAGER was at risk of experiencing the same rudder problem as the NORTHERN TRAVELER. Accordingly, the appellants argue that Shaughnessy's statement that the rudder nut problem was a one-time anomaly, combined with his failure to notify Shervo of the additional repair work performed by Laffey, deprived the appellants of the opportunity to perform the same preventative maintenance on the NORTHERN VOYAGER's rudders as had been performed on the NORTHERN TRAVELER's starboard rudder.

**II.**

We review the district court's findings of fact for clear error and its conclusions of law de novo. E.g., Commercial Union

Ins. Co. v. Seven Provinces Ins. Co., 217 F.3d 33, 40 (1st Cir. 2000). While the question of "whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for consideration as a [Chapter 93A] violation is a question of law." Saint-Gobain Indus. Ceramics v. Wellons, Inc., 246 F.3d 64, 73 (1st Cir. 2001) (citation omitted).

### 1. Chapter 93A Standard

Chapter 93A grants a cause of action to persons engaged in commerce who suffer a loss because of "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2. Though the statute does not define the term "unfair," courts applying Chapter 93A have established that a claimant must show "objectionable conduct [that] must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." Saint-Gobain, 246 F.3d at 73 (quotation omitted); Leings v. Forbes & Wallace, Inc., 396 N.E.2d 149, 153 (Mass. App. Ct. 1979). Mere negligence is not sufficient to trigger liability under the statute; instead, the statute was enacted to punish "truly inequitable marketplace behavior" that "unmistakably reeks of callousness." Vmark Software, Inc. v. EMC Corp., 642 N.E.2d 587, 597 (Mass. App. Ct. 1994) (quotations and citations omitted). Thus, in order to prevail under the statute,

a claimant must show that the defendant's conduct falls "'within at least the penumbra of some common-law, statutory, or other established concept of unfairness' or is 'immoral, oppressive or unscrupulous'" PMP Assoc. v. Globe Newspaper Co., 321 N.E.2d 915, 917 (1975), (quoted in Cambridge Plating Co. v. Napco, Inc., 85 F.3d 752, 769 (1st Cir. 1996)).

### 2. Discussion

The district court concluded that neither of the factual scenarios described by the appellant set forth facts sufficient to support a claim under Chapter 93A. We agree. While the repair work performed on the two vessels obviously left much to be desired, nothing in the record or in either of the appellants' two scenarios demonstrates any conduct by Wronowski or Cross Sound that rises to the level of "rascality," "callousness," or "truly inequitable marketplace behavior" required by the statute.

Even assuming that the appellants subordinated the interests of the NORTHERN VOYAGER in favor of the NEW LONDON by rushing the former's repair schedule, this is not the type of behavior Chapter 93A was intended to punish. The statute does not create a cause of action for a breach of contract alone unless it rises to the level of "commercial extortion" or a similar degree of culpable conduct. Commercial Union, 217 F.3d at 40. Likewise, "breach of warranty alone does not necessarily give rise to a Chapter 93A violation." Saint-Gobain, 246 F.3d at 73. At most,

the appellants' subordination scenario may support a possible interference with contractual relations claim; however, even if the appellants could establish an interference claim, we concur with the district court that they have not carried their burden of showing callousness or truly inequitable marketplace behavior.

Likewise, vague allegations of the appellees' duty to disclose the possible rudder problem on the NORTHERN VOYAGER do not rise to the necessary level of rascality required by the statute. While the incident may have proved a basis for a negligence claim against Wronowski or Thames, negligence alone is insufficient to create liability under the statute. Vmark Software, 642 N.E.2d at 597.

Finally, appellants also allege that the district court abused its discretion by denying their motion to amend the complaint. Having considered appellants' arguments and reviewed the record, we find that the court's decision was entirely within its discretion. See LaRocca v. Borden, Inc., 276 F.3d 22, 32 (1st Cir. 2002).

## III.

Because Northern Voyager and OneBeacon have not carried their burden under the statute, we do not find that any of the appellees' conduct constitutes unfair trade practices under Chapter 93A.

**Affirmed**.